UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS *ex rel.* AMY O'DONNELL, | |
| Relator/Plaintiff, | Case No. 14-cv-1098 |
| v. | |
| AMERICA AT HOME HEALTHCARE AND NURSING SERVICES, LTD., d/b/a ANGELS AT HOME HEALTHCARE, *et al.* | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Relator/Plaintiff Amy O'Donnell filed this *qui tam* action under the False Claims Act (FCA), 31 U.S.C. § 3729, *et seq.*, and its Illinois counterpart, the Illinois False Claims Act (IFCA), 740 ILCS § 175/1, *et seq.*, on behalf of the United States and the State of Illinois. Relator sues corporate defendants America at Home Healthcare and Nursing Services, Ltd. d/b/a Angels at Home Healthcare (AAH), and AAH's purported successor, Great Lakes Acquisition Corp. d/b/a Great Lakes Caring. Relator also sues former AAH employees, including Kim Richards. Relator alleges that, starting in 2006, AAH and its former employees billed Medicare and Medicaid fraudulently, and that Great Lakes continued AAH's fraudulent practices after buying AAH in early 2015.

A brief procedural background follows below. The Court presumes familiarity with its opinion granting Richards' prior motion to dismiss. Dkt. 94.

Relator amended her complaint for the first time in 2016. Dkt. 22. In response to Relator's amended complaint, all defendants moved to dismiss. Dkt. 55; Dkt. 61. Pursuant to the Court's standing order on motions to dismiss, the Court advised Relator that she could either amend her complaint for the second time or respond to the motions. Dkt. 54. Relator chose to amend again, so the Court denied the motions without prejudice. Dkt. 68. After Relator filed her second amended complaint in early 2017, the defendants again moved to dismiss. Dkt. 69; Dkt. 76; Dkt. 79. The Court dismissed Richards from the case, but also let Relator replead. Dkt. 94 at 22, 40.

Relator filed her third amended complaint this July. Dkt. 99. Within days, Richards moved to dismiss the case, arguing that Relator's allegations failed to satisfy Federal Rule of Civil Procedure 9(b)'s heightened requirements for pleading fraud. Dkt. 101. AAH, Great Lakes, and the other employee defendants later filed a motion to dismiss on similar grounds, which Richards joined. Dkt. 113.

This Memorandum Opinion and Order addresses only Richards' motion to dismiss, which is granted with prejudice.

I. **Legal Standard**

Because the FCA and IFCA are anti-fraud statutes, claims under both must meet Rule 9(b)'s heightened pleading requirements. *United States ex rel. Gross v. AIDS Research Alliance–Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) demands that claimants alleging fraud "state with particularity the circumstances constituting fraud." Particularity is analogous to a reporter's hook: "plaintiff[s]

2

ordinarily must describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks omitted). For example, if the alleged fraudulent scheme involves misrepresentation, the plaintiff must state who made "the misrepresentation, the time, place, and content of the misrepresentation, and [how] the misrepresentation was communicated." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014).

Of course, different cases require different levels of detail for a complaint to satisfy Rule 9(b). *Pirelli*, 631 F.3d at 442. A plaintiff must, however, inject "precision and some measure of substantiation" into fraud allegations. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted). As this Court said before, Rule 9(b) is also more significant in cases with multiple defendants. Dkt. 94 at 9–10. Because fair notice is perhaps the "most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994) (citations and internal quotation marks omitted).

II. **Analysis**

A. **Particularity**

The Court previously dismissed Richards because Relator's "sweeping allegations" against her lacked Rule 9(b) particularity. Dkt. 94 at 22. Richards

3

argues that the third amended complaint similarly lacks Rule 9(b) particularity. Dkt. 107. The Court agrees that Relator's latest effort is equally deficient under Rule 9(b).

Relator added only two new allegations that specifically address Richards:

- "Defendants AAH Healthcare, [Rachael] Fitzpatrick, and **Richards** also provided bonuses to marketers such as Defendant [Tami] Shemanske for each certification and recertification of patients for home health services, for the express purpose of incentivizing illegal certifications and recertifications of ineligible patients for medically unnecessary services." Dkt. 99, ¶ 136 (emphasis added).

- "Defendant **Richards** also instructed Steve O'Donnell to track referrals and recertifications for one of **Richard's** [sic] marketers in Massachusetts to facilitate payment to this marketer of a $100 bonus for Medicare recertifications and referrals." *Id.* ¶ 195 (emphasis added).

Like the deficient allegations from the second amended complaint, the new and amended allegations include Richards' name, but otherwise fail to provide the "first paragraph" details that Rule 9(b) demands. The first allegation above alludes to a broad time period "without listing any representative examples or specifics." Dkt. 94 at 22. Setting aside whether the mere act of tracking referrals and recertifications could alone constitute fraud under the FCA, the second allegation says nothing about the relevant period, requisite mental state, or even if O'Donnell actually followed Richards' purported instructions.[1] Given this Court's prior rulings, there is no need to delve into detail on the allegations that remained the same between the second and third amended complaints. Those allegations were not enough to satisfy Rule 9(b) then; they are not enough to satisfy Rule 9(b) now.

---

[1] The third amended complaint says "referrals were systematically tracked" without explaining whether O'Donnell did the tracking. Dkt. 99, ¶ 198.

4

Relator argues that the Court should relax Rule 9(b)'s standard because she alleged new information about being fired from AAH, thus satisfying Rule 9(b) by "showing that further particulars of the alleged fraud could not have been obtained without discovery." Dkt. 106 at 11–12 (quoting *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998)). To her prior allegations about being fired, Relator added that her termination was "abrupt[]" and happened "without advance warning." Dkt. 99, ¶ 258. Relator also alleged that she was "immediately deprived of her access to medical records, her work email account, and other documentation that she had had [sic] access to as an AAH Healthcare employee." *Id.* ¶ 259.

Relator is correct that a court lowers Rule 9(b)'s initial requirements when a plaintiff shows that she cannot obtain essential information without pretrial discovery, *Emery*, 134 F.3d at 1323, but Relator "did not make that showing" here. *Id.* The Court did not task Relator with producing precise details about patient medical records or the exact wording of Richards' communications. Rather, the Court required, as it must, something more precise than vague allegations that Richards repeated a fraudulent activity over a four-year period. Notably, the new termination allegations fail to explain how Relator would expect discovery of her work email account to remedy the deficiencies in her latest complaint.

Even without access to her AAH email account and AAH documents, Relator could have pleaded representative instances in which she or other employees observed Richards engaging in fraudulent conduct. For example, Relator described a December 2008 incident during which a different defendant ordered her to

5

recertify 14 patients as needing skilled nursing care, regardless of whether the patients met the medical standards for that care; Relator concluded that she could not recertify nine of the patients because they did not qualify for the care. Dkt. 99, ¶¶ 111–13. Also, Relator explained that "[w]ithout review of each of the patient records," she could not state "which of the 9/14 patients were not eligible for home health services." *Id.* ¶ 113.

That example contrasts sharply with Relator's allegations against Richards. The Court would not expect Relator to recall the names of nine patients whose records she reviewed in 2008, but Relator still gave the requisite details of the alleged fraud, including an approximate date and the number of patients involved. As the Seventh Circuit has explained, "flexibility in the face of information asymmetries should not be conflated with whistling past the rules of civil procedure." *Pirelli*, 631 F.3d at 446. Here, Relator has effectively asked this Court to forego the requirements of Rule 9(b) as to her allegations about Richards; the Court is unwilling to do so. Richards' motion to dismiss is granted.

### B. Leave to Replead

All told, Relator had four chances to plead particularized fraud claims against Richards. After finding Relator's third attempt deficient under Rule 9(b), the Court warned Relator that not fixing the deficiencies would "result in serious consequences for her case." Dkt. 94 at 40. Based upon the record here, and because Relator once again failed to correct the deficiencies after the Court's warning, the Court does not grant leave to replead.

Even though Rule 15(a)(2) instructs courts to freely give leave to amend "when justice so requires," that standard does not require this Court to give Relator a fifth bite at the apple in this case. *See, e.g.*, *Emery*, 134 F.3d at 1322–23 ("[W]hile it is possible that the deficiencies of the complaint could be cured by further pleading, the plaintiff has had three chances over the course of three years to state a claim and the district judge was not required to give her another chance.").

## III. Conclusion

Richards' motion to dismiss [101] is granted with prejudice.

Date: September 18, 2017

                                         Entered:

                                         John Robert Blakey
                                         United States District Judge